# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

DARWIN and CHERYL WATTS,
GERALD and RHONDA STEPP,
STEVEN and GINNY LEWIS, on
Behalf of themselves and all others
Similarly situated,

      Case No. 1:10-cv-753

      Plaintiffs,

      Hon. Janet T. Neff

v.

ENBRIDGE, INC., a Canadian corporation,
ENBRIDGE (U.S) Inc., a Wisconsin corporation,
And ENBRIDGE ENERGY COMPANY, INC.,
a Wisconsin corporation.

**VOLSTROMER, ET AL'S
RESPONSE TO MOTION FOR
CONSOLIDATION AND
APPLICATION OF THE MILLER
LAW FIRM, P.C. FOR INTERIM
LEAD COUNSEL**

      Defendant

---

THE MILLER LAW FIRM, P.C.
DAVID H. FINK (P28235)
E. POWELL MILLER (P39487)
MARC L. NEWMAN (P51393)
LAUREN G. NORTHROP (P69035)
Attorneys for Watts Class
950 W. University Dr., Suite 300
Rochester Hills, MI 48307
248-841-2200

HERTZ SCHRAM P.C.
PATRICIA STAMLER (P35905)
ELIZABETH C. THOMSON (P53579)
Attorneys for Volstromer Class
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
248-335-5000
pstamler@hertzschram.com
lthomson@hertzschram.com

MACUGA, LIDDLE & DUBIN, P.C.
STEVEN LIDDLE (945110)
DAVID DUBIN (P52521)
LAURA SHEETS (P63270)
KEVIN MCGINESS (P73281)
Attorneys for Volstromer Class
975 E. Jefferson Ave.
Detroit, MI 48207
313-392-0015
sliddle@mldclassaction.com
ddubin@mldclassaction.com
lsheets@mldclassaction.com
kmcginess@mldclassaction.com

---

### VOLSTROMER, ET AL'S RESPONSE TO
### MOTION FOR CONSOLIDATION AND APPLICATION OF
### THE MILLER LAW FIRM, P.C. FOR INTERIM LEAD COUNSEL

Now come Plaintiffs Eugene Volstromer and Gloria Volstromer, by and through their counsel Hertz Schram, P.C. and Macuga, Liddle & Dubin, P.C. (collectively the "Volstromer Class Counsel"), having filed a special appearance as movants in the above captioned matter against Enbridge, Inc., Enbridge (US), Inc. and Enbridge Energy Company, Inc. (collectively the "Defendants"), for the limited purpose of responding to Motion For Consolidation And Application Of The Miller Law Firm PC For Interim Lead Counsel, and for the reasons more fully set forth in the Brief in Support of Volstromer, et al's Response to Motion for Consolidation and Application of The Miller Law Firm, P.C. for Interim Lead Counsel hereby request that this Court enter an order providing as follows:

A.   Denying the Miller Law Firm's Motion for Appointment of Interim Class Counsel;

B.   Appointing the Volstromer Class Counsel as Interim Lead Class Counsel with full authority to represent the putative plaintiff class members in all ways authorized by the Court;

C.   Consolidating the Watts Lawsuit with the Volstromer Lawsuit;

D.   Enter Volstromer Class Counsel's proposed order granting consolidation and appointing Volstromer Class Counsel as Interim Lead counsel, attached hereto as Exhibit 15; and

E.   Grant any other relief deemed just and appropriate by the Court.

Respectfully submitted,

HERTZ SCHRAM PC

By:     /s/ Elizabeth C. Thomson
        PATRICIA A. STAMLER (P35905)
        ELIZABETH C. THOMSON (P53579)
        Attorneys for Plaintiffs
        1760 South Telegraph Road, Suite 300
        Bloomfield Hills, MI 48302
        248-335-5000


        MACUGA, LIDDLE & DUBIN PC

By:     /s/ Steven D. Liddle
        STEVEN D. LIDDLE (P45110)
        Attorneys for Plaintiffs
        975 E. Jefferson Ave.
        Detroit, MI 48207
        (313) 392-0015

Dated:  August 23, 2010


## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: David H. Fink, dhf@millerlawpc.com.


         /s/ Elizabeth C. Thomson
        PATRICIA A. STAMLER (P35905)
        ELIZABETH C. THOMSON (P53579)
        Attorneys for Plaintiffs
        1760 South Telegraph Road, Suite 300
        Bloomfield Hills, MI 48302
        248-335-5000
        lthomson@hertzschram.com

3

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

DARWIN and CHERYL WATTS,
GERALD and RHONDA STEPP,
STEVEN and GINNY LEWIS, on
Behalf of themselves and all others
Similarly situated,

       Plaintiffs,

v.

ENBRIDGE, INC., a Canadian corporation,
ENBRIDGE (U.S) Inc., a Wisconsin corporation,
And ENBRIDGE ENERGY COMPANY, INC.,
a Wisconsin corporation.

       Defendant

Case No. 1:10-cv-753

Hon. Janet T. Neff

**VOLSTROMER, ET AL'S BRIEF
IN SUPPORT OF RESPONSE TO
MOTION FOR CONSOLIDATION
AND APPLICATION OF THE
MILLER LAW FIRM, P.C. FOR
INTERIM LEAD COUNSEL**

_____/

THE MILLER LAW FIRM, P.C.
DAVID H. FINK (P28235)
E. POWELL MILLER (P39487)
MARC L. NEWMAN (P51393)
LAUREN G. NORTHROP (P69035)
Attorneys for Watts Class
950 W. University Dr., Suite 300
Rochester Hills, MI 48307
248-841-2200

HERTZ SCHRAM P.C.
PATRICIA STAMLER (P35905)
ELIZABETH C. THOMSON (P53579)
Attorneys for Volstromer Class
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
248-335-5000
pstamler@hertzschram.com
lthomson@hertzschram.com

MACUGA, LIDDLE & DUBIN, P.C.
STEVEN LIDDLE (945110)
DAVID DUBIN (P52521)
LAURA SHEETS (P63270)
KEVIN MCGINESS (P73281)
Attorneys for Volstromer Class
975 E. Jefferson Ave.
Detroit, MI 48207
313-392-0015
sliddle@mldclassaction.com
ddubin@mldclassaction.com
lsheets@mldclassaction.com
kmcginess@mldclassaction.com

_____/

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES...................................................................................... ii

INDEX OF AUTHORITIES...................................................................................... ii

STATEMENT OF ISSUES PRESENTED.............................................................. iii

INDEX OF CONTROLLING AUTHORITIES ...................................................... iv

I.     Introduction.................................................................................................. 1

II.    Facts and Procedural Background ................................................................ 3

III.   Argument ..................................................................................................... 4

      A.    Volstromer Class Counsel's Identification and Investigation of Potential Claims and Resources Committed to Representing the Class - Rule 23(g)(1)(A)(i) and (iv) .......................................................................6

            1.    Communication with Putative Class Members............................. 6
            2.    Experts ......................................................................................... 7

                  a.    DeLisle Associates, LTD ............................................... 7
                  b.    Dr. Kathleen Burns ........................................................ 8
                  c.    Dr. Michael Harbut ........................................................ 9
                  d.    Other Liability, Causation and Damages Experts........................ 10
                  e.    Local Support ................................................................ 10

            3.    Gathering Information Prior To The Commencement of Discovery........ 10

      B.    Volstromer Class Counsel's Extensive Environmental Litigation Experience and Knowledge of Applicable Law - Rule 23(g)(1)(A)(ii) and (iii)..................................................................................................11

      C.    Consolidation of the Watts Lawsuit with the Volstromer Lawsuit.....................15

IV.   Conclusion ................................................................................................. 15

# INDEX OF AUTHORITIES

## Cases

*Coleman v. General Motors Acceptance Corp.,* 220 F.R.D. 64, 100 (M.D. Tenn. 2004) ......... iv, 4

*Ehler v. Ipex, Inc.,* 2009 U.S. Dist. LEXIS 45089 (US. Dist. Ct. CO., 2009) ........................ iv, 15

*In re Agent Orange Product Liab. Litig.,* 996 F.2d 1425, 1435 (2d. Cir. 1993) ..................... iv, 11

*In re Air Cargo Shipping Servs. Antitrust Litig.,* 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ............. iv, 5

*In re Cree, Inc., Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003);
   Fed. R. Civ. P. 23(g)(4) ............................................................................................ iv, 4

*In re Hannaford Bros. Co. Customer Data Security Breach Litig.,* 252 F.R.D. 66, 69
   (U.S. Dist. Ct. ME., 2008) ....................................................................................... iv, 15

## Rules

Fed. R. Civ. P. 42(a) ........................................................................................................ iv, 15

Fed.R. Civ. P. Rule 23 ............................................................................................................. 4

## STATEMENT OF ISSUES PRESENTED

I.      Should the Court consolidate the *Volstromer* class action with the *Watts* class action for all purposes?

        Plaintiffs Answer: Yes

        Volstromer Class Counsel Answers: Yes

II.     If this Court consolidates the *Volstromer* class action with the *Watts* class action for all purposes, should the Miller Law Firm be appointed interim lead counsel?

        Plaintiffs Answer: Yes

        Volstromer Class Counsel Answers: No

## <u>INDEX OF CONTROLLING AUTHORITIES</u>

### FEDERAL CASES

*Coleman v. General Motors Acceptance Corp.,*
     220 F.R.D. 64, 100 (M.D. Tenn. 2004)

*Ehler v. Ipex, Inc.,*
     2009 U.S. Dist. LEXIS 45089 (US. Dist. Ct. CO., 2009)

*In re Agent Orange Product Liab. Litig.,*
     996 F.2d 1425, 1435 (2d. Cir. 1993)

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
     240 F.R.D. 56, 57 (E.D.N.Y. 2006)

*In re Cree, Inc., Sec. Litig.,*
     219 F.R.D. 369, 373 (M.D.N.C. 2003)

*In re Hannaford Bros. Co. Customer Data Security Breach Litig.,*
     252 F.R.D. 66, 69 (U.S. Dist. Ct. ME., 2008)

### FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 23(g)

Fed. R. Civ. P. 42(a)

### ADDITIONAL SOURCES

*Manual for Complex Litigation* (Fourth) (2004)

## I.    __Introduction__

Defendants are responsible for releasing approximately 1 million gallons of crude oil into the Kalamazoo River; creating one of the worst environmental catastrophes in this State's history and causing public officials to declare the surrounding communities, including the cities of Battle Creek and Marshall, disaster areas.  Government officials determined the impact of the oil spill to be a "state of emergency" as hundreds of area residents have been forced from their homes due to intolerable living conditions.  In many areas, the air is not safe to breathe and the water is not potable. Residents have fled to hotels and others are relying on friends and family to shelter them in order to escape the noxious fumes. Normally healthy adults, children, expectant mothers and the elderly, are sick with headaches, nausea, skin rashes, diarrhea and respiratory problems. Many have sought medical treatment and others have been hospitalized due to more severe reactions to chemical exposure.  Hundreds of citizens continue to be displaced or are at home but forced indoors in order to minimize their exposure to Benzene (a Class A carcinogenic) and a host of other dangerous volatile organic compounds and heavy metal constituents found in the crude oil that contaminated the Kalamazoo River and its environs.  Crews of workers have been flown in from all over the United States and Canada to help with the clean-up and environmental remediation which has been ongoing since July 26, 2010, the date the Defendants reported the spill to government officials.  Environmental officials estimate that it could take many months or longer to complete the clean up process.

The communities surrounding the Kalamazoo River remain in a state of turmoil. Many residents cannot return home and have no place to go.  Residents are concerned about well water drinking supplies, property contamination, compromised air quality, noxious fumes, present and future health hazards and decreased property values.  Defendants have made spurious attempts to

provide short term and "quick fix" remedies by setting up temporary storefront claims centers for area residents.  However, many residents have been turned away after being told that they do not qualify under the Defendants' compensation protocol.  Moreover, based on information obtained, Defendants have exploited numerous area residents by requiring them to execute full and final releases of all of their legal claims against Defendants in exchange for reimbursement of minimal out-of-pocket expenses for basic needs such as air purifiers, food and lodging.  Low income residents have been particularly vulnerable to the Defendants' tactics due to their inability to secure alternative housing and necessary supplies for themselves. (Exhibit 1, "Enbridge Release")  <u>Defendants' actions in this regard are unconscionable</u>. Many people have been left without answers to important questions and with little or no help for their imminent needs.  In an effort to protect their legal rights and to find guidance in matters related to their damages suffered, hundreds of area residents have rightfully sought advice and legal representation from Volstromer Class Counsel.  Given the vast experience of the Volstromer Class Counsel in litigating environmental class action cases and their dedication to the protection of property rights, they immediately set into motion a plan to assist their clients and putative class members on a variety of matters related to the oil spill.

In a crisis situation such as this, putative class members need legal counsel immediately and cannot wait for the determination regarding appointment of class counsel before they are given assistance. The events surrounding the oil spill are serious and the rights of the people cannot be taken lightly or managed by a law firm that dabbles in environmental litigation or one that is taking its "first shot" in handling a case of this magnitude. Any lawsuit filed as a result of the devastating oil spill, which has caused damage to thousands of people and their property, has profound implications requiring prosecution by the most qualified and experienced law firm.

Volstromer Class Counsel have extensive experience and a strong history of handling environmental class actions. This experience prompted the Volstromer Class Counsel to act promptly and diligently on behalf of the putative class in response to contact from hundreds of affected residents following the oil spill disaster. As more fully briefed below, Volstromer Class Counsel are most qualified to be appointed interim lead class counsel in this matter.

## II.    Facts and Procedural Background.

As a result of Volstromer Class Counsels' reputations of having superior expertise in environmental class action litigation, counsel began receiving telephone calls from concerned citizens in the affected communities immediately after the oil spill. Volstromer Class Counsel quickly took action: immediately traveling to the impacted communities, talking with area residents, photographing and filming the devastation, holding "town-hall" meetings, attending public meetings hosted by the Environmental Protection Agency ("EPA"), retaining environmental and health experts and testing of the air, land and water effected by the oil spill.

On July 30, 2010, the Volstromer Class Counsel filed suit against Defendants, Civil Action No. 1:10-cv-752, assigned to Honorable Gordon J. Quist (the "Volstromer Lawsuit"), on behalf of Eugene and Gloria Volstromer, and all those similarly situated (collectively the "Volstromer Class"). The Volstromer Lawsuit was the first lawsuit of any kind filed against Defendants related to the oil spill. On August 2, 2010, the Miller Law Firm contacted Volstromer Class Counsel seeking to join in the pending litigation and stating that if their request to join the Volstromer Lawsuit was denied, it would file its own case and would seek to be appointed lead class counsel. Volstromer Class Counsel declined the Miller Law Firm's "offer." On August 2, 2010, the Miller Law Firm filed its related action on behalf of Darwin and Cheryl Watts and other similarly situated individuals (collectively the "Watts Lawsuit"). However,

3

contrary to the filing requirements in this Court, the Miller Law Firm failed to advise the Court

that there is a related pending case (the Volstromer Lawsuit).[1] Defendants have yet to respond to

either Volstromer Lawsuit or the Watts Lawsuit, however, the Miller Law Firm, despite its lack

of efforts on behalf of the putative class and deficient experience in handing matters of this kind,

spared no time in filing its Application for Appointment of Interim Lead Counsel.

## III.  **Argument**

For a variety of reasons, the Volstromer Class Counsel is best equipped to represent the

interests of the class.[2] Fed. R. Civ. P. 23, which governs certification of a case as a class action,

sets forth the criteria the court must use when appointing class counsel. Fed.R. Civ. P. 23(g).

Fed.R. Civ. P. 23(g)(3) provides that, "The court may designate interim counsel to act on behalf

of a putative class before determining whether to certify the action as a class action". "[T]he

primary responsibility of class counsel, resulting from appointment as such, is to represent the

best interest of the class." *Coleman v. General Motors Acceptance Corp.,* 220 F.R.D. 64, 100

(M.D. Tenn. 2004); *In re Cree, Inc., Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003); Fed. R.

Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interest of the class.").

"[W]here multiple overlapping and duplicative actions have been transferred to a single district

for coordination of pretrial proceedings, designation of interim class counsel is encouraged and

indeed is probably essential for efficient case management." *In re Air Cargo Shipping Servs.*

---

[1]  The Miller Law Firm's failure to alert this Court to a pending related action created
unwarranted burdens on this Court and Volstromer Class Counsel. Specifically, had the Miller
Firm properly identified their matter as a related case, the case would have been assigned to
Judge Quist, would have obviated the need for Volstromer Class Counsel to file an appearance in
this case, etc.

[2]  Fed. R. Civ. P. 23(g)(2), titled the "Standard for Appointing Class Counsel" states "when one
applicant seeks appointment as class counsel, the court may appoint that applicant only if the
applicant is adequate under Rule 23(g)(1) and (4).  If more than one adequate applicant seeks
appointment, the court must appoint the applicant best able to represent the interest of the class."

*Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (citing the *Manual for Complex Litigation* (Fourth) ("Manual") §21.11 (2004).

Neither Rule 23(g) nor the Advisory Committee Notes to the Rule explicitly state the standard courts should apply in selecting interim counsel. However, numerous courts have held that the court should apply the same standard that is used in selecting class counsel at the time of class certification. In that regard, Fed. R. Civ. P. 23(g)(1)(A) states that the court *must* consider:

(i)    The work counsel has done in identifying or investigating potential claims in the action;

(ii)    Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    Counsel's knowledge of the applicable law; and

(iv)    Further, the Court may consider the resources that counsel will commit to representing the class.

"Fed. R. Civ. P. 23(g)(1)(B) also states that the Court may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class."

Further, "[i]n evaluating prospective class counsel, the Court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case."[3]  Where more than one applicant seeks to represent the class, "the court *must* appoint the applicant best able to represent the interest of the class." (Emphasis added) Fed.R. Civ. P. 23(g)(2).  The Volstromer Class Counsel satisfies each of the above requirements, as more fully addressed herein.

---

[3] Rule 23(g)(C) Advisory Committee Notes (2003); see also Manual, §10.224, at 27 (listing additional factors for the Court to consider, including compensation, full disclosure of agreements between counsel, whether diverse interests exist, and the proven ability of counsel to work cooperatively with other counsel) and §21.27, at 278-282 (discussing criteria, approaches and procedures for appointment).

A.    **Volstromer Class Counsel's Identification and Investigation of Potential Claims and Resources Committed to Representing the Class - Rule 23(g)(1)(A)(i) and (iv)**

Volstromer Class Counsel has spent considerable time investigating potential claims and has committed significant resources representing the putative class.

1.    **Communication with Putative Class Members**

Proper representation of the putative class requires fundamental interaction and communication in an environmental case where people are faced with immediate concerns for their health, safety and the welfare of their property. Volstromer Class Counsel immediately set up several mechanisms to facilitate communication with affected residents in order to properly identify claims. Two "town-hall" meetings have been hosted by the Volstromer Class Counsel in Marshall, Michigan and in Springfield, Michigan, to provide hundreds of residents with information regarding their legal rights and to provide a forum for the community to air all of their concerns and complaints. The standing-room-only meetings provided residents with an opportunity to meet face-to-face with a lawyer to discuss their rights.

A Data Sheet has been disseminated to the putative class members allowing them to record and communicate their experiences and concerns to Volstromer Class Counsel. These Data Sheets provide crucial feedback needed to properly identify claims on behalf of the residents. Toll-free telephone lines were established to enable people, particularly those who have evacuated their homes, to readily contact counsel. Teams of lawyers and paralegals are on staff all times during business hours in order to promptly receive telephone calls and electronic correspondence from area residents. The telephone calls that flooded the two firms immediately following the oil spill are still pouring in as of the date of this responsive filing. These efforts

6

have resulted almost *300 households* personally contacting the Volstromer Class Counsel at this early stage.[4]

### 2. <u>Experts</u>

Volstromer Class Counsel have retained and consulted with a number of reputable scientific, environmental and medical experts regarding various issues related to the oil spill.

### a. DeLisle Associates, LTD.

Volstromer Class Counsel know that residents need answers to pressing concerns from independant sources which have no relationship with the Defendants. Understanding the importance of collecting evidence in support of Defendants' liability and the putative class members' damages as they are ongoing, Volstromer Class Counsel immediately began environmental testing of areas impacted by the oil spill. In a catastrophe such as this, those who represent the putative class members cannot sit by while evidence dissipates into the air, water, or soil. Only those who are experienced in environmental class actions understand this essential fact and this is precisely why Volstromer Class Counsel has already expended significant time and the financial resources required to obtain independent environmental testing.

Within days of the oil spill, Volstromer Class Counsel retained one of the State's foremost environmental testing organizations, DeLisle Associates, LTD. ("DeLisle"), to perform testing of ground water, air and soil within areas potentially impacted by the oil spill. (Exhibit 2, "DeLisle Statement of Qualifications") DeLisle has continued testing in various areas in Marshall and Battle Creek, including <u>indoor air quality</u>, a component of environmental testing that, according to information known, has not been performed by any public environmental

---

[4] While there are almost 300 homes that have contacted the Volstromer Class Counsel, it must be noted that this potentially translates into almost 1,000 people. Data Sheets evidencing these contacts have not been attached hereto, but will be available for the Court's *in camera* inspection, if requested at the time of the hearing on this Motion.

agency or the Defendants. Volstromer Class Counsel has been providing their clients and putative class members with updates regarding the testing and results that are known to date.

### b.     Dr. Kathleen Burns

In the wake of such a significant environmental crisis, area residents are understandably concerned about the potential impacts to their health. Volstromer Class Counsel is attempting to track the physical symptoms people have experienced following the spill in order to document evidence in support of their damages.[5]

Volstromer Class Counsel retained Dr. Kathleen Burns, a renowned toxicologist who has managed investigative teams which have conducted health evaluations of air, water, soil, and food contamination in the United States and other countries and has developed protective policies to reduce people's exposure to toxic chemicals. Dr. Burns has worked for state and federal agencies since 1981. (Exhibit 3, "Dr. Burns CV") Dr. Burns has published books and papers on the health effects of chemicals, including petroleum ingredients and is the founder and director of Sciencecorps, an organization that has assisted Veterans, tribal organizations, 9/11 cleanup workers, and communities across the United States on environmental health issues. She is currently providing Gulf residents with information on health hazards of the oil spill and dispersants. She has degrees from the University of Chicago and the University of Illinois Medical Center, with specialty training from Northwestern University Medical School and Harvard University. (Exhibit 3)

Volstromer Class Counsel, with the assistance of Dr. Burns, created a report entitled, "Kalamazoo River Oil Spill Health Hazards", which provides information to people to help them

---

[5] If it is established that some residents have experienced individual health problems as a result of the oil spill, those claims will be filed and pursued on an individual basis separate and apart from this class action.

understand the potential health risks associated with the crude oil exposure. (Exhibit 4, "Kalamazoo River Oil Spill Health Hazards.") This report is posted on Volstromer Class Counsel's websites and has been disbursed in hard copy format to hundreds of area residents. Dr. Burns will also assist in reviewing and analyzing all environmental testing data from DeLisle as well as all studies and reports conducted by Defendants and other third parties including but not limited to the EPA.

### c. Dr. Michael Harbut

In an effort to respond to the concerns of the area residents who have become more seriously ill as a result of exposure to oil contaminants, Volstromer Class Counsel has communicated with nationally renowned occupational and environmental medical physician, Dr. Michael Harbut, the director of the Environmental Cancer Program at the Karmanos Cancer Center and the Chief of the Wayne State University Center for Occupational and Environmental Medicine. Dr. Harbut has engaged in extensive work related to the health hazards associated with the Gulf oil spill and is one of the most qualified medical care providers in the country to treat residents who have been impacted by the Kalamazoo River oil spill. Dr. Harbut has allowed Volstromer Counsel to direct any area residents with health concerns to him for examination and treatment, as necessary. (Exhibit 5, "Dr. Harbut, Statement of Qualifications") Dr. Harbut's contact information is contained in the "Kalamazoo River Oil Spill Health Hazards" report and has been posted on counsels' websites.[6]

---

[6] Dr. Harbut has not and will not be retained as an expert in this case.

9

### d.        Other Liability, Causation and Damages Experts

Volstromer Class Counsel has researched and consulted with a number of other potential experts on the issues of liability, causation and damages in this case. It is imperative that only the best and most qualified experts be retained in order to adequately identify and prove the claims of the putative class members.  Among other experts, counsel has consulted with Steven T. Werely, Ph.D., Professor of Mechanical Engineering at Purdue University, who has testified before United States Congress in various matters related to the Gulf oil spill.  (Exhibit 6, "Dr. Werely CV")

### e.        Local Support

Volstromer Class Counsel has communicated with representatives from the Circle D Wildlife Refuge for information on how to manage contaminated wildlife located on the property of putative class members. Counsel has also communicated with representatives from the Calhoun Conservation District to receive instruction for area residents on how to maintain lawns that had been flooded by oil saturated river water.

### 3.        <u>Gathering Information Prior To The Commencement of Discovery</u>

It is imperative in a case involving an environmental catastrophe that immediate steps are taken to gather information related to the claims and damages alleged in the case.  Before and since the filing of the Volstromer Lawsuit, Volstromer Class Counsel has aggressively investigated facts and circumstances related to the oil spill.  Witnesses have been interviewed, disaster areas and other related proceedings have been filmed and photographed, representatives have attended public meetings held by the EPA, Defendants and other officials and Freedom of

Information Act requests have been submitted to various public agencies involved in the oil spill. (Exhibit 7, "FOIA Requests")

**B. <u>Volstromer Class Counsel's Extensive Environmental Litigation Experience and Knowledge of Applicable Law - Rule 23(g)(1)(A)(ii) and (iii)</u>**

Only legal counsel with extensive knowledge and experience in handling environmental class actions should be considered for appointment of interim class counsel in this matter. Federal courts evaluating the adequacy of representation requirement for appointment of class counsel have repeatedly held, counsel will fairly and adequately represent a class where counsel is qualified, experienced, and generally able to conduct the litigation on behalf of the class. *See, e.g. In re Agent Orange Product Liab. Litig.*, 996 F.2d 1425, 1435 (2d. Cir. 1993). As leading firms in environmental class actions cases, with particularly well-developed track records of experience and accomplishments in cases such as this, Volstromer Class Counsel more than meet this standard.

In support of its Motion for Appointment of Interim Class Counsel, the Miller Law Firm provides a resume reflecting a number of securities and consumer oriented class actions. Volstromer Class Counsel respectfully submits, however, that the Miller Law Firm lacks the experience to prosecute an environmental class action like the present matter. The Miller Law Firm has not identified one lawsuit on its list of experience, class action or otherwise, involving environmental issues on behalf of a plaintiff class. While memberships in environmental organizations and associations with law school professors are impressive on paper at first glance, what must be considered is the experience in handling the type of case at hand and the work that has been done to advance the interests of the class. Noticeably absent from Miller Law Firm's petition to be appointed interim class counsel is any reference to work performed to advance the interests of the putative class in this case. The present case is not a securities or "wall street"

11

type of class action where there is little involvement or interaction with a putative class. Environmental class actions, by their very nature, require direct and continuous communication with the putative class. Neither the Miller Law Firm's credentials, nor the fact that it first filed its petition for appointment of interim class counsel, warrant this Court's appointment of the Miller Law Firm as lead interim counsel in this environmental case.

Volstromer Class Counsel proffers superior resumes with the unique distinction of litigating environmental class actions on behalf of thousands of property owners and renters. This prior experience guided the efforts expended on behalf of the putative class to date.  If this Court determines that it is appropriate to appoint interim class counsel at this juncture, the Volstromer Class Counsel is the most appropriate choice to ensure that this case continues to be litigated aggressively, thoroughly and an efficient manner that will benefit the class and this Court.

Volstromer Class Counsel has collectively served as lead counsel in excess of one hundred cases involving neighborhood environmental contamination, including numerous cases dealing with odors and air pollution (Exhibit 8,  "List Experience of the law firm of Macuga, Liddle & Dubin"; Exhibit 9,  "List of Experience of the law firm of Hertz Schram") Further, Volstromer Class Counsel has handled numerous cases involving the flooding of private property with sewage caused from pipeline ruptures.  The mechanics of the pipeline and oil spill at issue are similar to the issues involved in sewage pipeline cases. Through this experience, Volstromer Class Counsel has obtained extensive knowledge of the applicable law, including but not limited to the areas of nuisance, negligence, trespass and the manner in which environmental class actions are litigated.

All of the attorneys at the law firm of Macuga, Liddle & Dubin are highly qualified attorneys who specialize in environmental class actions. Among them, attorney Steven D. Liddle has been a leader in environmental class action litigation for many years. (Exhibit 10, "Affidavit of Steven D. Liddle") Mr. Liddle has successfully prosecuted litigation for sewer overflows, air pollution, water contamination and environmental disasters on behalf of property owners in Michigan as well as other states. (Exhibit 8, "List Experience of the law firm of Macuga, Liddle & Dubin").   The primary focus of Mr. Liddle's entire legal career and his firms' practice has been environmental class actions.  As a result, each of the attorneys in his employ has obtained significant experience litigating environmental class actions. (Exhibit 11, "Affidavit of David R. Dubin";  Exhibit 12, "Affidavit of Laura L. Sheets") Mr. Liddle's firm is uniquely qualified to not only litigate environmental class actions, but to manage them as well.  His staff has effectively managed the settlement and payout of millions of dollars to hundreds of thousands of people without the use of outside assistance.

In addition to practicing law, Mr. Liddle has served as an adjunct professor at Michigan State University College of Law where he taught a course entitled "Complex Litigation" which focused mainly on class actions.   In 2002, Mr. Liddle successfully lobbied the Michigan Legislature for the passage of Public Act 222, which created an exception to governmental immunity for sewage backups. In recognition of his efforts in obtaining passage of Public Act 222, Mr. Liddle was named one of Lawyers Weekly's, "Lawyer of the Year for 2002."

Attorney Elizabeth C. Thomson of the law firm of Hertz Schram has extensive experience in environmental class actions and other mass tort matters and has recovered millions of dollars on behalf of property owners and injured people. Ms. Thomson also lectured at the American Trial Lawyers Association Conference in San Francisco, California on the issue of

13

nuisance law. Among other environmental litigation successes involving air pollution, sewer overflows and environmental disasters on behalf of property owners, Ms. Thomson has recently litigated and resolved two class action cases against oil treatment and transportation companies in Wayne County, Michigan. (Exhibit 13, "Affidavit of Elizabeth C. Thomson")

Among a number of preeminent attorneys with class action experience at the Hertz Schram law firm, attorney Patricia Stamler has litigated a variety of class actions obtaining millions of dollars in compensation, by way of example, on behalf of employees at Henry Ford Hospital. (Exhibit 14, "Affidavit of Patricia Stamler").

Hertz Schram is also uniquely qualified to manage this case as, unlike many class action law firms, the firm has class action trial experience and has recovered over $95 million dollars in various class action matters. (Exhibit 9, "List of Experience of the law firm of Hertz Schram") Hertz Schram is presently awaiting entry of final judgment in favor of the plaintiff class comprised of participants and beneficiaries of an ERISA-governed pension plan, in excess of $5 million dollars, which will bring the firm's successes to over $100 million dollars recovered on behalf of plaintiff classes. (Exhibit 9, "List of Experience of the law firm of Hertz Schram"), *See Humphrey v United Way.*)

As a combined force, the Volstromer Class Counsel are abundantly capable, experienced and have more than sufficient resources to properly litigate this matter in the manner required to best serve the interests of the class. Appointment of the Volstromer Class Counsel by this Court will ensure that this case will be handled efficiently though a team of lawyers who have spent their careers primarily focused on litigating cases of this kind. Clearly, Volstromer Class

Counsel's request to be appointed interim lead class counsel is sought with the clear understanding of the significant responsibility that is concomitant with the role.[7]

### C.    Consolidation of the Watts Lawsuit with the Volstromer Lawsuit

Watts, et al further move this Court for consolidation of the Watts Lawsuit with the Volstromer Lawsuit.  Fed. R. Civ. P. 42(a) governs the consolidation of cases and allows the Court to consolidate actions involving common questions of law and fact. Volstromer Class Counsel has no basis to object to the consolidation of the cases as they do involve common issues, and defers to the discretion of the Court on this matter.

## IV.    Conclusion

A case of this magnitude necessitates the appointment of interim lead counsel that has the experience to effectively pursue the best interests of the class.  Proof of the Volstromer Class Counsel's experience lies not only in their resumes, but in the way this case has been handled thus far.

WHEREFORE, Volstromer Class Counsel respectfully requests that this Honorable Court grant the following relief:

A.    Deny the Miller Law Firm's Motion for Appointment of Interim Class Counsel;

---

[7] Various courts have established the responsibilities of the Interim Lead Counsel to include: functioning as liaison counsel; supervising all proceedings on Plaintiffs' behalf; have sole authority to communicate with defendants counsel and the court on behalf of the plaintiffs; determine and present to the Court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings; conduct settlement negotiations on behalf of plaintiffs; enter into stipulations with opposing counsel as necessary to conduct litigation; monitor the activities of co-counsel to ensure schedules are met and unnecessary expenditure of time and funds is avoided; conduct all initial investigation of fact and law relating to liability and damages and conduct and coordinate informal discovery; etc. (see *In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 252 F.R.D. 66, 69 (U.S. Dist. Ct. ME., 2008); see also *Ehler v. Ipex, Inc.*, 2009 U.S. Dist. LEXIS 45089 (US. Dist. Ct. CO., 2009).

B.    Appoint the Volstromer Class Counsel as Interim Lead Class Counsel with full authority to represent the putative plaintiff class members in all ways authorized by the Court;

C.    Consolidate the Watts Lawsuit with the Volstromer Lawsuit;

D.    Enter Volstromer Class Counsel's proposed order regarding this Motion, attached hereto as Exhibit 15; and

E.    Grant any other relief deemed just and appropriate by the Court.


                                    Respectfully submitted,

                                    HERTZ SCHRAM PC

                    By:    /s/ Elizabeth C. Thomson
                           PATRICIA A. STAMLER (P35905)
                           ELIZABETH C. THOMSON (P53579)
                           Attorneys for Plaintiffs
                           1760 South Telegraph Road, Suite 300
                           Bloomfield Hills, MI 48302
                           248-335-5000


                                    MACUGA, LIDDLE & DUBIN PC

                    By:    /s/ Steven D. Liddle [w/consent]
                           STEVEN D. LIDDLE (P45110)
                           Attorneys for Plaintiffs
                           975 E. Jefferson Ave.
                           Detroit, MI 48207
                           (313) 392-0015

Dated:  August 23, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: David H. Fink, <u>dhf@millerlawpc.com</u>.

 /s/ Elizabeth C. Thomson
PATRICIA A. STAMLER (P35905)
ELIZABETH C. THOMSON (P53579)
Attorneys for Plaintiffs
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
248-335-5000
<u>lthomson@hertzschram.com</u>
