UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PRECIOUS HOLDER, NOELLE HOGAN,
DARWIN WATTS, and CHERYL WATTS,
individuals and on behalf of all others
similarly situated,

      Plaintiffs,

v.                                                                     Case No. 1:10-CV-752

ENBRIDGE ENERGY, L.P.,                               HON. GORDON J. QUIST
ENBRIDGE PIPELINES (LAKEHEAD),
L.L.C., ENBRIDGE PIPELINES
(WISCONSIN), INC.,

      Defendants.
_____/

**OPINION**

      Defendants Enbridge Energy, L.P., Enbridge Pipelines (Lakehead), L.L.C., and Enbridge Pipelines (Wisconsin), Inc. (collectively referred to as "Defendants"), have filed a motion to dismiss Count III of Plaintiffs' First Consolidated Class Action Complaint (the "Complaint"), which alleges strict liability for abnormally dangerous activity, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants have also filed a motion to strike specific portions of the Complaint pursuant to Fed. R. Civ. P. 12(f). The Court does not find oral argument necessary for the resolution of either motion. For the reasons set forth below, the Court concludes that both motions should be denied.

**I. FACTS**

      The following facts are taken from the allegations in the Complaint.

      Defendants own, operate, and maintain a pipeline system built in 1969 known as the "Lakehead System," which transports petroleum products from Western Canada to the United States. Among other types of petroleum products, the Lakehead System is used to transport

Canadian tar sands oil, also known as bitumen, which is a sticky form of crude oil that often must be heated or diluted with other materials before it will flow through pipelines. With the increased price paid for crude in recent years, it has now become economically practical to extract bitumen from the tar sands. Yet, because bitumen blends are more acidic, thick, and sulfuric than conventional crude oil, and because of the high temperature required to keep the blend flowing, bitumen blends are more corrosive to pipeline systems than conventional crude oil. A February 2011 report entitled "Tar Sands Pipelines Safety Risks," which was jointly issued by the Natural Resources Defense Council, the Pipeline Safety Trust, the National Wildlife Federation, and the Sierra Club, indicates that the rate of spills due to internal corrosion may be 16 times higher in pipelines carrying tar sands oil than those carrying conventional crudes.

A portion of the Lakehead System, known as Line 6B, runs through the State of Michigan. On or about July 25, 2010, a large amount of oil leaked from Line 6B near Defendants' pump station located in Marshall, Michigan. Some 840,000 gallons made its way into the Talmadge Creek and, from there, the Kalamazoo River, 30 miles of which remain closed to this date. With this suit, Plaintiffs seek to hold Defendants liable for the extensive damage caused by the spill. Plaintiffs allege three claims: Negligence (Count I); Nuisance (Count II); and Strict Liability For Abnormally Dangerous Activity (Count III).

Defendants have filed motions asking the Court to dismiss Count III for failure to state a claim and to strike specific portions of the Complaint. The Court will address each motion in turn.

## II. Motion to Dismiss

**A.     Motion Standard**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In analyzing a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008).

**B.     Discussion**

Pled in the alternative to the negligence count, Count III alleges that Defendants were engaged in an abnormally dangerous activity by transporting tar sands oil, alongside sensitive waterways, through an antiquated pipeline that was not specifically designed for transporting such a corrosive oil, and should, therefore, be held strictly liable for all damages resulting therefrom. Defendants contend that the strict liability count should be dismissed because no Michigan court has

ever extended the abnormally dangerous activity doctrine to the maintenance of an oil pipeline and because numerous other courts have specifically declined to do so.

The Court must first decide whether the determination of whether an activity is abnormally dangerous is a question of fact for the jury, as Plaintiffs contend, or an issue of law for the Court, as Defendants contend. The Court finds that Defendants have the better side of the argument.

In asserting that the issue is one of fact for the jury, Plaintiffs do not cite any case law actually involving a claim of strict liability for abnormally dangerous activity, as presented here. Instead, Plaintiffs rely on cases involving the "inherently dangerous activity" doctrine, which is an exception to the general rule that a land owner who hires an independent contractor is not liable for injuries that the contractor negligently causes (i.e., if a particular task is inherently dangerous, the land owner "cannot delegate to the contractor the duty to see that the necessary care is taken and thereby escape liability"). *Perry v. McLouth Steel Corp.*, 154 Mich. App. 284, 301, 397 N.W.2d 284, 291-92 (1986); *see also Dowell v. Gen. Tel. Co. of Mich.*, 85 Mich. App. 84, 91, 270 N.W.2d 711, 715 (1978). Defendants, in contrast, cite *Doe v. Johnson*, 817 F. Supp. 1382 (W.D. Mich. 1993), which does involve strict liability for abnormally dangerous activities and in which the court, interpreting Michigan law, held that "the question whether an activity is abnormally dangerous is a question of law for the Court." *Id.* at 1398.

In addition, the parties do not dispute that Michigan follows the Restatement (Second) of Torts in determining whether an activity is abnormally dangerous, *see id.* at 1397; *see also Locke v. Mach*, 115 Mich. App. 191, 195, 320 N.W.2d 70, 72 (1982), which specifically provides that the issue is one for the Court to decide:

> *l. Function of the court.* Whether the activity is an abnormally dangerous one is to be determined by the court, upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence. In this it differs from questions of negligence. Whether the conduct of the defendant

4

> has been that of a reasonable man of ordinary prudence or in the alternative has been negligent is ordinarily an issue to be left to the jury. The standard of the hypothetical reasonable man is essentially a jury standard, in which the court interferes only in the clearest cases. A jury is fully competent to decide whether the defendant has properly driven his horse or operated his train or guarded his machinery or repaired his premises, or dug a hole. The imposition of strict liability, on the other hand, involves a characterization of the defendant's activity or enterprise itself, and a decision as to whether he is free to conduct it at all without becoming subject to liability for harm that ensues even though he has used all reasonable care. This calls for a decision of the court; and it is no part of the province of the jury to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place or whether such an activity as blasting is to be permitted without liability in the center of a large city.

Restatement (Second) of Torts § 520 cmt. l. Other jurisdictions that follow the Restatement's approach for determining whether an activity is abnormally dangerous also find the issue to be one of law. *See, e.g.*, *Fiorentino v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506, 512 (M.D. Pa. 2010); *Liss v. Milford Partners, Inc.*, No. X07CV044025123S, 2008 WL 4635981, at *4 (Conn. Super. Ct. Sept. 29, 2008); *New Meadows Holding Co. v. Wash. Water Power Co.*, 102 Wash. 2d 495, 500, 687 P.2d 212, 215 (1984). Accordingly, the Court should decide, as a matter of law, whether the activity at issue is abnormally dangerous.

Under the Restatement, to determine whether an activity is abnormally dangerous, the Court must consider the following factors:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520.

Defendants assert that, as a matter of law, the transmission of petroleum products by pipeline is not an abnormally dangerous activity. In support, Defendants note that, although Michigan has yet to rule on the issue, numerous courts in other jurisdictions that follow the Restatement approach have declined to extend strict liability to the transmission of oil through pipelines. *See, e.g.*, *Melso v. Sun Pipe Line Co.*, 394 Pa. Super. 578, 586, 576 A.2d 999, 1003 (1990) ("The court below erred, in our opinion, in determining that the operation of a petroleum pipeline . . was an abnormally dangerous activity."); *Fletcher v. Conoco*, 129 F. Supp. 2d 1255, 1261 (W.D. Mo. 2001) ("[A]s a matter of law, the operation of a cathodically-protected petroleum pipeline is not an abnormally dangerous activity."); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059 (E.D. Mo. 2010) (finding that the plaintiffs' arguments went to the manner in which the pipeline was maintained, rather than whether the operation of the pipeline in and of itself is an abnormally dangerous activity, and were insufficient to overcome the holding in *Fletcher* that the operation of a pipeline is not an abnormally dangerous activity).

Plaintiffs, in contrast, assert that the question is not merely whether transmitting petroleum products via pipeline is abnormally dangerous, but whether transmitting "tar sands oil . . . through obsolete pipelines not designated for its transport, near sensitive waterways, is an abnormally dangerous undertaking." (Pls.' Reply at 1.) This issue, Plaintiffs assert, is highly fact-intensive and should not be decided until discovery is closed and the Court has a more developed record on which to make its determination. *See, e.g.*, *Berish v. Sw. Energy Prod. Co.*, 763 F. Supp. 2d 702, 705 (M.D. Pa. 2011) (noting that "since the determination of whether or not an activity is abnormally dangerous is fact-intensive, courts often wait until after discovery is complete before making this determination" and declining to rule at the motion to dismiss stage whether underground drilling via the hydraulic fracturing technique to dislodge underground gas was abnormally dangerous);

*Fiorentino*, 750 F. Supp. 2d at 512 (denying a motion to dismiss plaintiff's strict liability claim, noting that although Pennsylvania courts had found related activities not to be abnormally dangerous, Pennsylvania had yet to address whether gas-well drilling was abnormally dangerous, and explaining that the matter should be decided based upon a more fully-developed record); *accord Smith v. Mid-Valley Pipeline Co.*, No. 3:07-CV-13-KKC, 2007 WL 1309612, at *3 (E.D. Ky. May 4, 2007) (noting that no Kentucky case had extended strict liability to the transmission of oil through pipelines, but declining to rule on the issue at the motion to dismiss stage).

The Court agrees with Plaintiffs that the decision of whether strict liability is warranted in this case should not be made until the record is more fully-developed. Although the Court recognizes that numerous other courts have found that, as a matter of law, the transmission of petroleum products in general is not an abnormally dangerous activity, it finds that automatically extending the rule to the type of petroleum at issue here should receive more thorough consideration. By way of example, it is unclear how common the transmission of tar sands oil is throughout the United States, even if the transmission of other petroleum products is commonplace. Moreover, given the highly corrosive nature of the oil at issue, it is unclear whether and to what extent the danger of leakage can be avoided through the exercise of reasonable care. Therefore, the Court will deny Defendants' motion to dismiss Count III at this juncture. After discovery, Defendants may reassert their argument in a motion for summary judgment, based upon what the Court hopes will be a more fully-developed record.

### III. MOTION TO STRIKE

**A.  Motion Standard**

Pursuant to Fed. R. Civ. P. 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter." As the Sixth Circuit has explained,

> [p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be striken [sic] has no possible relation to the controversy.

*Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted); *see also* 4 Charles Alan Wright et al., Federal Practice and Procedure § 1382 (3d ed. 2011) (explaining that Rule 12(f) motions are not favored and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"). "Courts are given considerable discretion in deciding whether to strike portions of pleadings under 12(f)." *Thomson v. Hartford Life & Accident Ins. Co.*, 270 F.R.D. 277, 279 (W.D. Ky. 2010) (citing Fed. R. Evid. 12(f) and *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009)).

**B.     Discussion**

Defendants first ask the Court to strike paragraphs 17 through 19 and 28 through 33, all of which describe incidents involving Defendants' other pipelines, apart from Line 6B, including several other oil spills and a newspaper article describing regulatory action taken against Defendants by Canada's National Energy Board in October 2010. Defendants allege that these allegations are irrelevant, prejudicial, serve no purpose other than to improperly inject "other bad acts" evidence into the litigation, and include inadmissible hearsay.

Plaintiffs counter that the allegations are relevant to both the strict liability and negligence claims in that they establish the propensity of Defendants' pipelines to rupture when carrying bitumen blends, establish Defendants' pattern and practice of negligently maintaining its pipeline system, and establish that Defendants had notice of their pipelines' safety deficiencies and their

probability of rupture. As to Defendants' evidentiary objections based upon "other bad acts" and hearsay evidence, Plaintiffs assert that the question under Rule 12(f) "is not whether the evidence is admissible, but whether it is immaterial, impertinent, and scandalous." *Lane v. Endurance Am. Specialty Ins. Co.*, No. 3:10-CV-401-MOC-DCK, 2011 WL 1343201, at *3 (W.D.N.C. Apr. 8, 2011) (citing *Goodman Distrib., Inc. v. Haaf*, No. 4:10-CV-806 CAS, 2010 WL 4117379, at *10 (E.D. Mo. Oct. 19, 2010)). Besides, Plaintiffs argue, the evidence of similar ruptures is admissible under Fed. R. Evid. 404(b) for purposes of showing knowledge, and, as to the alleged "hearsay" newspaper article, Plaintiffs do not contend that the article itself is admissible as evidence, but that it provides a factual background for the widespread problems with Defendants' pipelines system.

The Court finds that Plaintiffs have the better side of the argument. The Court cannot say, at this stage of the litigation, that evidence relating to ruptures of Defendants' other pipelines and problems with Defendants' pipeline system in general have no possible bearing on the subject matter of this case. *Brown*, 201 F.2d at 822. At a minimum, they may establish Defendants' knowledge of particular problems with its pipeline system and/or with transporting tar sands oil through it. In addition, the Court finds that resolving evidentiary disputes at this stage of the litigation would be premature and that such matters are best resolved in a motion in limine. *See, e.g.*, *North Face Apparel Corp., v. Williams Pharmacy, Inc.*, No. 4:09CV2029RWS, 2010 WL 546318, at *2 (E.D. Mo. Feb. 9, 2010); *Providence Town Ctr. LP v. Raymours Furniture Co.*, No. 09-3902, 2009 WL 3821935, at *5 (E.D. Pa. Nov. 13, 2009); *Chicago Ins. Co. v. Health Care Indem., Inc.*, No. 3:09-0659, 2009 WL 3380387, at *1-2 (S.D.W.Va. Oct. 20, 2009). Even if the article referred to in the complaint or evidence of a particular spill is not admissible at trial, at this stage, it provides helpful background and context to Plaintiffs' claims. *See Chicago Ins. Co.*, 2009 WL 3380387, at *2.

Defendants next ask the Court to strike paragraphs 20 through 27, which contain statements found in an "official timeline" and "Corrective Action Order" from the Pipeline and Hazardous

9

Materials Safety Administration ("PHMSA") regarding a 2009 inspection of Line 6B as well as statements in a Detroit Free Press article regarding warnings Defendants had received relating to safety issues along its Lakehead System.  Defendants also ask the Court to strike paragraphs 51-53, which contain statements made by the EPA's Deputy Incident Commander, Mark Durno, who was charged with overseeing the clean-up, on Michigan Public Radio relating to the extent of the contamination.  Defendants allege that the statements are prejudicial, redundant, designed solely to provoke the reader, include inadmissible hearsay, and are an improper attempt to supply evidentiary support to Plaintiff's allegations.

Again, in its discretion, the Court declines to strike the allegations.  Paragraphs 20 through 27 in particular are directly relevant to Plaintiffs' negligence claim as they relate to Defendants' knowledge of problems with its pipeline, including line 6B.  Mr. Durno's statements, even if ultimately determined to be inadmissible at trial, at this point provide factual information relating to the extent of the damage and difficulty in clean-up due to the nature of the oil involved.  Thus, for the same reasons set forth above, the Court declines to strike the allegations at this early stage of the litigation.

Finally, Defendants asks the Court to strike the photograph contained on page 9 of the Complaint, which depicts the ruptured portion of Line 6B.  Defendants allege that the photograph is a premature attempt to present evidence to the Court and to inflame the reader.  In support, Defendants cite a case from the United States District Court for the District of Arizona, striking digital images contained in a pleading after interpreting Fed. R. Civ. P. 10 so as to limit evidentiary submissions to "written instruments," not photographs, and to require that they be attached as exhibits, rather than included within the pleading itself.  *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-1467-PHS-ROS, 2009 WL 2382998, at *2 (D. Ariz. Aug. 4, 2009). Plaintiffs counter with case law from this circuit explaining that including photographs in a

complaint can satisfy the requirement that elements of trade dress be specifically identified and articulated in a list because a picture is "sufficient to place a defendant on notice of the trade dress infringement claims asserted against it." *Dayco Prods., LLC v. Dorman Prods., Inc.*, No. 09-cv-13139, 2010 WL 38855221, at *5 (E.D. Mich. Sept. 28, 2010).

The Court has reviewed both parties' arguments and finds that the picture need not be stricken. Again, the Court cannot say that it has no bearing on the subject matter of this case and it is no more prejudicial to Defendants, in the Court's view, than the allegations relating to other pipeline ruptures, Defendants' knowledge of problems with its pipeline systems, and the extent of the damage caused by the rupture of Line 6B. Accordingly, the Court will deny the motion to strike in its entirety.

## CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Motion For Partial Dismissal Pursuant To Rule 12(B)(6) (docket no. 68) and Defendants' Motion To Strike (docket no. 69).

A separate Order will issue.

Dated:  September 2, 2011                   /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE